ADAM GORDON
United States Attorney
ALEXANDRA F. FOSTER
D.C. Bar No. 470096
JOHN N. PARMLEY
Assistant United States Attorney
California State Bar No. 178885
United States Attorney's Office
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 546-7957
Email: John.Parmley@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL PRATT (1),<br><br>Defendant. | Case No.: 19-CR-4488-JLS<br><br>GOVERNMENT'S SENTENCING MEMORANDUM |

The United States of America, by its counsel, Adam Gordon, United States Attorney, Alexandra F. Foster and John N. Parmley, Assistant United States Attorneys, hereby submits its Sentencing Memorandum.

## I
## INTRODUCTION

Defendant Michael Pratt ("Defendant") was the ringleader in a wide-ranging sex-trafficking conspiracy during which many women were defrauded into engaging in sex acts on camera, destroying many of their lives. Defendant now faces sentencing by this Court following his guilty pleas on Count One, Conspiracy to Commit Sex Trafficking by Force,

Fraud and Coercion, in violation of 18 U.S.C. § 1594(c) and § 1591(a)(1) and (2), and Count Two, a substantive count of Committing Sex Trafficking by Force, Fraud and Coercion, in violation of 18 U.S.C. § 1591(a)(1), (a)(2) and (2). But for Defendant, this scheme would never have occurred, and hundreds of women would not have been victimized. Given the serious nature of the offenses, Defendant's role, and the length of the conspiracy, the United States is recommending a sentence of 260 months in custody.

## II
## OFFENSE CONDUCT

Defendant led the conspiracy to recruit young women to appear in sex videos for adult websites by using force, fraud, and coercion. Defendant was the owner and operator of the pornography websites GirlsDoPorn.com (GDP) and GirlsDoToys.com (GDT). Both websites featured young women appearing in their first pornographic video. Defendant came up with the idea for the websites, recruited women to appear in the videos, sometimes transported the women to and from the site of the video shoot, sometimes manned the camera for the videos, and otherwise managed the business. He formulated the scheme, hired co-Defendants Wolfe, Garcia, Gyi and Moser, oversaw the functioning of the business and, ultimately, reaped millions of dollars in profit from his unlawful activity.

As a part of the premeditated scheme, Defendant, along with his co-defendants, recruited victims to appear in sex videos for the websites by promising them that these videos would never be posted on-line, that they would never be released in the United States, and that no one who knew the women would ever find out about the videos. During the pendency of this scheme, hundreds of women from various cities throughout the United States and Canada were recruited to appear in videos based on these material misrepresentations.

Throughout the scheme, Defendant knew these representations were false. Defendant knew the entire videos were being posted on his fee-based websites, GDP and

GDT. He also had excerpts posted on free pornographic sites, like Pornhub.com --one of the most frequently viewed websites in the world, to drive traffic to GDP and GDT.[1]

Defendant and other members of the conspiracy took active steps to ensure that the victims did not find out that Defendant and the other members of the conspiracy operated GDP and GDT. Defendant knew that most of the young women they were recruiting would have never agreed to appear in a video if they knew that videos of their explicit sexual activity would be posted on the internet and marketed to their friends and family.

Most of the sex videos that were created as a part of the conspiracy were shot at hotels or short-term rental units in the San Diego area. If one of the women agreed to act in the pornographic video, Defendant and his co-conspirators promptly booked flights to San Diego within a day or two. Once victims arrived at the hotel or short-term rental unit, Defendant and his employees continued to falsely assure the victims that the videos would not be posted on-line and that no one who knew the victims would see, or even know about, the video. Victims were told that the contracts that they were presented with simply said what the victims had already been told, including that the videos would not be posted on-line. Nowhere on the contract could the reader find a reference to GDP or GDT. The companies were instead identified with innocuous names, such as Bubblegum Casting or BLL Media. Victims were not provided a copy of the contracts that they signed.

As a part of the conspiracy, Defendant or his employees would at times coerce victims into completing the videos once they were underway. Defendant or his employees threatened to sue the victims, cancel flights home, and post the videos on-line if the victims did not complete the sex videos. Hotel room doors were often blocked by camera and recording equipment, and many victims felt powerless and unable to leave.

---

[1] As the PSR accurately notes, Defendant was running the same scheme from at least January 2011 through March 2012 with a different male model, Douglas Wiederhold. *See* ECF Dkt. 452, PSR at ¶ 33 (citing *United States v. Wiederhold*, 23CR1202-JLS.) During that time, Defendant recruited the women, picked them up from the airport, ran the video shoot, and paid the women. *Id*. Defendant lied to those women as well, telling them that their sex videos would never appear on-line, while posting the videos on GDP, available to anyone willing to pay the monthly fee, and posting snippets of those videos on PornHub, available to anyone for free. *Id*.

Defendant became aware that personal identifying information and social media accounts for victims were being posted on pornwikileaks.com, which was purportedly dedicated to "exposing" the true identities of anonymous women who appeared in sex videos. Even after Defendant became aware of this, he and his co-conspirators continued to assure prospective models that "no one" would ever find out about their video or learn their identity.[2]

Once the GDP and GDT videos were posted, victims would contact Defendant and/or his employees and beg them to take their videos down. Defendant and his employees would not reply, would not take the video down, and often blocked the victim from contacting them again.

Victim #1's story provides just one example of the fraud perpetrated on hundreds of women. In his plea agreement, Defendant conceded that:

In approximately May 2012, Defendant, using the alias "Matt," recruited Victim 1. The original Craigslist advertisement was for modeling, and it was posted under the name Bubblegum Casting. Victim 1 responded to the ad and communicated with Defendant. Defendant explained that the job was actually to shoot an "adult video." He falsely assured Victim 1 that her video would only be seen in Australia by private clients and would not be posted on the internet. Victim 1 was 18 years old at the time of these conversations.

Victim 1 initially declined, but Defendant referred her to a reference girl to convince Victim 1 to do the video and reassure Victim 1 that her video would not be posted on-line. Relying upon Defendant's and the reference girl's assurances, Victim 1 traveled from another state to San Diego for the video shoot. Defendant picked Victim 1 up at the airport

---

[2] The PSR also notes *U.S. v. Alexander Foster*, 23CR0111-JLS, where Foster pled guilty to conspiracy to stalk the 22 victims who sued Defendant in civil court. *See* ECF Dkt. 452, PSR at ¶¶ 35-36. Pratt directed and paid Foster to create a video titled "22 Whores + 5 Shady Lawyers VS GirlsDoPorn" and include each of the women's full name, physical appearance and location. Pratt directed Foster to add snippets of the women's video depositions from their civil case and their Instagram posts and find someone to take video of the women leaving the courthouse. Included in the paperwork provided to Foster was not only the women's full names but also their dates of birth and the year that they filmed with GDP. Foster did not complete the video, because the FBI executed a warrant on the GDP business in October 2019.

and drove her to a hotel in San Diego. Defendant operated the camera. He directed and filmed the sex video.

Prior to making the video, Defendant rushed Victim 1 through a contract and did not provide her with a copy. Defendant had promised Victim 1 that the video would take 30 minutes, but it took hours to film. Once the video was done, Defendant gave Victim 1 $2,000.

Victim 1's video was posted on GDP approximately nine months after the shoot. Victim 1 contacted Defendant after her video was posted to the GDP website and begged him to take her video down. Defendant did not reply and did not take the video down.

## III
## DEFENDANT'S BACKGROUND

Defendant is a citizen of New Zealand, who came to the United States in 2009 and became a legal permanent resident in 2012. Defendant has a high school degree and told the PSR writer that he has worked in the pornography field since he as 16 years old. ECF Dkt. 452, PSR at ¶ 176. Defendant has no prior criminal convictions.

## IV
## SENTENCING GUIDELINES ANALYSIS

A. <u>Parties' Guideline Calculations</u>

Pursuant to the plea agreement, the parties will jointly recommend the following sentencing guidelines:

| | |
|---|---|
| Base Offense Level [§ 2G1.1] | 34 |
| More than 10 Victims [§ 2G1.1, App. Note 6] | +3 |
| Aggravating Role [§ 3B1.1] | +4 |
| Acceptance of Responsibility | -3 |
| Adjusted Offense Level: | 38 |

5

According to the Presentence Investigation Report, Defendant has zero criminal history points and is therefore in Criminal History Category I. At Criminal History Category I, an offense level 38 corresponds to a sentence of 235-293 months in custody.

### B. Sentencing Recommendation

Consistent with the parties' plea agreement, and considering the 3553(a) factors, the Government recommends a sentence of 260 months in custody, 10 years of Supervised Release, sex offender registration, $200 special assessment and restitution to be determined at a later date.

## V
## CONCLUSION

For almost a decade, the Defendant led the scheme to systematically coerce and defraud women into engaging in filmed sexual activity for profit. A sentence of 260 months is warranted, given the longevity of the scheme, the amount of profit, and the extent of the damage to the victims.

Dated: August 29, 2025                    Respectfully submitted,

ADAM GORDON
United States Attorney

*s/ Alexandra F. Foster*
ALEXANDRA F. FOSTER
JOHN N. PARMLEY
Assistant United States Attorneys